No. 25.—John G. Park, plaintiff in error, vs. William A. Tennille and Swan P. Burnett, trustee, &c. claimant, defendants. Also, John A. Breedlove vs. same parties.

[1.] A marriage settlement contained these provisions: that the woman's property, consisting of a plantation and slaves and debts and other things, should remain her separate property, subject to the management and control of the man and woman. That the man was not to be accountable for the annual increase or profits arising from the trust property, or for interest on the debts due, or to become due, or which might afterwards "be placed in" the hands of the man by the woman, but only for the principal, subject to such dispositions of the same as the woman might make by will. That the woman was to retain the right to sell and dispose of any portion of the property and "to invest the proceeds of the same into other property for the uses and trusts" specified in the settlement, "and to dispose of the proceeds of such sale as to her" should "seem meet for her interest and happiness." After the marriage, the crop of cotton and corn of a certain year was, on the first of November, levied on as the property of the man to satisfy *fi. fas.* against him: *Held*, that it was not subject to be so levied on.

Levy and claim from Randolph. Tried before Judge Kiddoo, May Term, 1856.

John G. Park and John A. Breedlove having respectively obtained judgments against William A. Tennille, sought to have satisfaction of the same by levying their respective *fi. fas.* on certain "corn and cotton" as the property of said Tennille. Swan P. Burnett, as the trustee of Lucy Tennille, wife of defendant in *fi. fas.* interposed a claim to this property, and the two causes came up together for trial at the said term of said Court upon the following agreement, to-wit:

| " John G. Park | |
|---|---|
| vs. | *Fi. Fa.* levy |
| William A. Tennille, def't, and | and claim. |
| Swan P. Burnett, claimant. | |
| John A. Breedlove | |
| vs. | *Fi. Fa.* levy |
| William A. Tennille, def't, and | and claim. |
| Swan P. Burnett, claimant. | |

It is agreed by and between the Attorneys for plaintiff and claimant, that the corn and cotton levied on by virtue of each of said *fi. fas.* were made on the land and by the negroes held in trust for Lucy Tennille, wife of said William A. Tennille. We farther agree to submit to the Court the trust deed, and if the Court decides that the proceeds of the trust property is subject to levy and sale for the payment of judgments against defendant, then plaintiffs are to take verdicts finding the property levied on subject. But if the Court decides that said corn and cotton, the proceeds of said property, are not subject to pay the debts of defendant, then verdicts are to be taken for claimant, and either party has the right to take the case to the Supreme Court.

HOOD & ROBINSON,
TUCKER & BEALL,
Plaintiffs' Attorneys.
PERKINS & NISBET,
Claimants' Attorneys.

The trust deed referred to and introduced in proof by claimant is as follows:

GEORGIA, EARLY COUNTY:

This indenture of three parts, made and entered into, this the tenth day of October, eighteen hundred and forty-two, between William A. Tennille, of the County and State aforesaid of the first part and Lucinda M. Fort of the County of Randolph and said State of the second part, and John W. Brown of the County of Early and said State of the third part, witnesseth that the said William A. Tennille, for and in consideration of a marriage to be had and solemnized between him the said William A. Tennille of the first part, and the said Lucinda M. Fort of the second part, does for himself, his heirs, executors, administrators and assigns, covenant, grant and agree that all those several tracts of land situate, lying and being in the eighth district of the County of Randolph, embraced and enclosed in the settlement and

plantation on which the said Lucinda M. Fort now resides, containing thirteen hundred acres, more or less, with all the rights, members and appurtenances to the same in any wise belonging or appertaining, and all other lands which the said Lucinda M. Fort may, at the date hereof, hold in her own right or otherwise, with all the rights, members and appurtenances thereto belonging or appertaining, and twenty-three negroes, to-wit: Nicholas, Gilbert, Tom, Simon and James, men; Billy, John, Joshua, George, Little, Jerry, Augustus, James, Berrien and Joseph, boys; Mariah and Hannah, women, with small children; and Dorah, Maria, Mary, Rachael and Antoinette, girls; and the stock of horses, cattle, hogs and sheep; and the household and kitchen furniture now in the possession of the said Lucinda M. Fort, and all money, notes and accounts due and to become due, accruing and to accrue to the said Lucinda M. Fort, in her own right and now or which hereafter may come to her possession, shall and remain to be her separate property and estate, and shall not, in Law or Equity, be subject to the payment of the debts of the said William A. Tennille, or be subject to be sold and conveyed by him, but the right and title of said property shall be vested in the said John W. Brown, for the uses and trusts hereinafter mentioned, and for the use and benefit of the said Lucinda M. Fort, subject, nevertheless, to the exclusive management and control of the said William A. Tennille and the said Lucinda M. Fort; the said William A. Tennille not to be accountable, either in Law or Equity, for the annual increase or profits arising from said estate, or for interest upon any moneys which may come to his hands in the collection of debts due or to become due to the said Lucinda M. Fort, or which may hereafter be placed in his hands by the said Lucinda M. Fort, but only for the principal of said sum or sums, and subject to such dispositions of the same as the said Lucinda M. Fort, by her last will and testament, legally executed, may at any time hereafter make.

And the said Wm. A. Tennille further covenants and agrees, that notwithstanding the said marriage, the said Lu-

cinda M. Fort shall retain and exercise the right to sell and dispose of any portion of her estate, either real or personal, as to her shall seem meet and proper, and to invest the proceeds of the same into other property, for the uses and trusts herein specified, and to dispose of the proceeds of such sale as to her shall seem best for her interest and happiness. And the said John W. Brown is hereby fully authorized and required, upon the application and at the request of the said Lucinda M. Fort, to execute and sign, as trustee for the said Lucinda M. Fort, deeds and all necessary writings and papers, to convey legal titles to the purchasers of any or any portion of the before mentioned property, which she may desire to sell and dispose of as aforesaid.

And the said Wm. A. Tennille further covenants and agrees, that the said Lucinda M. Fort may dispose of her said estate by will, to any person whom she may in that way appoint, subject to the use of said Wm. A. Tennille during the continuance of the coverture as aforesaid.

And the said Wm. A. Tennille and Lucinda M. Fort nominate and appoint John W. Brown trustee of said property; and they agree that if the said trustee shall become unable, from any cause, to execute the trust herein set forth, that the said trustee shall have power to appoint, by writing, under his hand, a successsor, to be designated by her, said Lucinda M. Fort; and the said John W. Brown covenants and agrees to his nomination and appointment of trustee for said property, and hereby covenants and agrees to perform the trust hereby reposed in him, for the interest of the parties and according to the true intent and meaning of this indenture. In testimony whereof, the parties of the first, second and third parts have hereunto set their hands and affixed their seals, the day and year above written.

WILLIAM A. TENNILLE, [L.S.]
LUCINDA M. FORT, [L.S.]
JOHN W. BROWN, [L.S.]

Signed, sealed and acknowledged before us,
WILLIAM MOUNT,
GEORGE W. BROWN, J. P.      Recorded July 6th, 1843.

Upon this state of facts the Court below decided that " the
proceeds of the property held in trust as aforesaid, were not
subject to levy and sale to pay judgments against the defend-
ant," Wm. A. Tennille.    A verdict was taken for the claim-
ant, and Counsel for plaintiffs in *fi. fa.* excepted.

A. Hood and Tucker, for plaintiff in error.

W. C. Perkins, for defendants.

*By the Court.*—Benning, J. delivering the opinion.

[1.] The Court below decided that " the proceeds" of the
·trust property were not subject to the payment of William
·A. Tennille's debts.    Was that decision right?    This is the
question.

Whether the decision was right or not, depends upon what
was the extent of William A. Tennille's interest in the trust
property.    If his interest in that property was no greater
than that of tenant, at the will of his wife, in the " annual in-
crease and profits" of the property, the decision was right.
It was also right even if his interest in the property was as
·great as that of absolute owner of the " annual increase and
profits" of the property, provided the expression, " *annual
increase and profits,*" as used in the deed, means *net* annual
increase and profits.

The interest of a tenant at will, is not assignable.    And
what is not assignable, cannot be leviable.    If, then, Ten-
nille's interest was only that of tenant at will, in the " annual
·increase and profits" of the property, it was not such as was
·subject to be seized and sold under a *fi. fa.* against him.

Was Tennille, then, but a tenant at will in the annual in-
crease and profits?    It is extremely doubtful whether he was
anything more.    The interest which he had was such, ..hat
Mrs. Tennille could, at pleasure, defeat it in at least two
ways.

His interest, whatever it was, he derived from the fi   w-

ing clause in the deed : "and for the use and benefit of the said Lucinda M. Fort, subject, nevertheless, to the exclusive management and control of the said William A. Tennille and the said Lucinda M. Fort, the said William not to be accountable, either in Law or Equity, for the annual increase or profits arising from said estate, or for interest upon any moneys which may come to his hands in the collection of debts due or to become due to the said Lucinda M. Fort, or which may hereafter be placed in his hands by the said Lucinda M. Fort, but only for the principal of said sum or sums."

Now, if Mrs. Tennille had sold the whole of the trust property on a long credit, and had taken, in payment, a note or bond bearing interest, payable annually, and, failing or refusing to "place" such note or bond in the hands of William A. Tennille for collection, had, herself, kept it and collected the annual interest—instalments due on it, what estate would Tennille have had left in the trust property ?      None.

But she has the power, on such terms, to sell the property ; for the deed contains this covenant, on the part of William A. Tennille : "And the said William A. Tennille further covenants and agrees that, notwithstanding the said marriage, the said Lucinda M. Fort shall retain and exercise the right to sell and dispose of any portion of her estate, either real or personal, as to her shall seem meet and proper, and to invest the proceeds of the same into other property, for the uses and trusts herein specified, and to dispose of the proceeds of such sale as to her shall seem best for her interest and happiness." Now here is a covenant by Wm. A. Tennille, that Lucinda M. Fort shall have, first, a general power of sale and disposal ; secondly, a power to invest the proceeds of any sale, if any is made, in other property on the same trusts ; thirdly, a general power to dispose of the proceeds of any sale, in any way that to her may seem best for her interest and happiness. And can it be doubted that she did not, by virtue of the first of these three powers, or by virtue of the last; or, at least, by virtue of the first and last taken together, retain

the right to make such a sale as that which I have supposed her to have made ?   Hardly, I think.   The last of the three powers is certainly an independent power—complete in itself.

Such a sale as that which I have supposed made, would be one way of defeating the interest of Wm. A. Tennille in the property.

But even if Lucinda M. Fort has not the power to make such a sale, viz : a sale on a long credit, with the interest on the purchase money, payable annually, but has only the power to sell for cash, and on the condition immediately to revest the proceeds of a sale in other property of some sort, yet, under the last of these three powers, or of these two, if we choose to count the first and second as parts of a single power, she certainly can defeat all of Wm. A. Tennille's interest, whatever that may be ; for under this power she is authorized to dispose of the proceeds of a sale of the trust property, in any way that, to her, may seem best for her interest and happiness ; that is, just as she may please.

She may, therefore, dispose of such proceeds by investing them in property yielding no income—no " annual increase of profits"—as wild lands or vacant town lots, or stocks yielding no dividends, or a charity.   Any of these operations she may repeat again and again.   She may bestow such increase or profits as a gift on a friend or relative.   But if she should dispose of such proceeds in any of these modes, all interest of Wm. A. Tennille, under the trust deed, would be defeated, for his interest is confined by that deed to the annual increase or profits arising from the trust property.

This, then, is another way by which Lucinda M. Fort may, as long as she lives, defeat all interest of Wm. A. Tennille in the trust property.   And the deed contains a stipulation that she may dispose of the property, by will, as she pleases. By this she may defeat his interest for all time, after her death.

Is the interest or estate of one person, which is thus dependent upon the pleasure of another person, at all greater than an estate at will ?   I think it exceedingly doubtful.

This, however, is the extent of the interest of Wm. A. Ten-nille, under the deed.

· But let it be granted that this interest is more than an es-tate at will—that it is an absolute interest—an absolute in-terest in "the annual increase or profits;" let it be granted that the deed gives absolutely to Wm. A. Tennille "the an-nual increase or profits" of the trust property; then the question is, what the deed means by this expression: Does it mean the *gross* annual increase or profits, or the *net?*

The case was that of a levy on gross proceeds; for it con-sisted of a levy on the corn crop and the cotton crop of a particular year, and that a levy made on the first day of No-vember. And it is presumed that a crop cannot be all net profits. It is to be presumed that expenses are incurred in making a crop; and such expenses have to be deducted from the year's gross profits, in order to bring to view the year's net profits. And what these expenses will be in any year, cannot be ascertained until the end of the year, and fre-quently not until after the end of the year. A crop, then, is gross profits; it is not net profits.

Did the deed, then, mean to give to Wm. A. Tennille the whole gross annual increase or profits of the trust property? To say that it did, is to say that the deed intended to defeat its own object. The object of the deed was, it is admitted on all hands, to keep to Lucinda M. Fort at least the whole *capital*—the whole *corpus* of the property. But if the gross annual profits of a plantation and slaves be constantly ab-stracted from the plantation and slaves; if the annual expen-ses of the plantation and slaves be constantly charged, not upon the annual profits, but upon the capital, the plantation and slaves must soon melt away from the owner and vanish from his sight.

Now, an instrument is not to be so interpreted as to make it defeat its own object; at least, it is not, if it will admit of an interpretation that will make it accomplish its object. And such an interpretation, this deed will admit of. The expression, "the annual increase or profits," may well mean

the *net* annual increase or profits. In strictness, nothing, perhaps, can be annual increase—can be annual profits of a plantation with slaves, except what remains of the year's products after a deduction of the year's expenses.

And what thus remains may be spent every year without impairing the capital.

To say, then, that the words aforesaid mean *net* annual increase or profits, is to say what is consistent with the words of the deed, and what will make the deed accomplish that which is manifestly its great, if not its only object, the preservation, unimpaired, of the *corpus* of the trust property.

This, therefore, is what we ought to say that the words mean.

Now what was levied on, and what the Court decided to be not subject to levy, was part of a year's *gross* increase of the trust property. It was the corn crop and the cotton crop as they stood on the first day of November.

These crops could not have been all net increase. They stood charged with the expenses incurred up to the first of November, and with such as might be incurred afterwards, during the remainder of the year, and perhaps longer. And it was impossible to tell, at the time of the levy, what these expenses might turn out to be.

The argument, then, stands thus: The year's *net* increase of the trust property was all that was subject to be levied on. What was levied on was the crop of cotton and corn as that existed on the first of November. A crop is not a year's net increase of the capital and labor it takes to make the crop. Expenses have to be deducted. What these expenses for any year may be, cannot be known before the end of the year, nor then, if the year's business is not then closed. Therefore, what was levied on was not net increase of the trust property; and the levy was made before the time had come when it could be known what the net increase would be, or whether there would be any net increase.

And therefore, we say that what was levied on was not subject to levy. Such an interest as that of Tennille in the

property levied on was no more the subject of levy, than is; the interest of a distributee the subject of levy at a time when some debts against the estate are known to the administrator,. and when the period allowed to him for finding out what others may exist against it, has not expired.

It is our opinion, therefore, that the decision of the Court, below was right.