Tutt *vs.* Land.

---

WILLIAM H. TUTT, plaintiff in error, *vs.* ROBERT H. LAND, defendant in error.

50  339
f124  108
e1241044

1. Where the Court, at a regular term, appoints an auditor, in a case involving matters of account, with the powers as provided in section 4202, of the new Code, and no exceptions thereon are certified, filed, etc., during the term as by law prescribed, it is too late when the auditor proceeds to act in vacation, to object to his appointment, or to the powers conferred on him, or to make such objections the ground of exceptions to his report.

2. When a contract of partnership provides that one partner shall furnish the stock of goods (drugs) then on hand, and the other shall give his skill, services, etc., and the first shall have three-fourths of the net profits, the other the remaining fourth, the partner so furnishing the capital is not entitled, in the division of the profits, to interest on the capital stock.

3. One item of the contract was, " if the wants and necessities of said business demand an increase of capital, and the same be supplied by the said, (the partner who furnished the original stock,) the firm stipulate to pay him interest therefor at the rates," etc. :

*Held,* That the simple fact that said partner did not withdraw the whole of his share of the profits for the first year, without any agreement or notice to the other partner that the capital was to be increased to that amount, did not give such partner the right of interest on such excess.

4. Nor was such partner entitled to claim for the ordinary, natural depreciation of the goods and fixtures of the store, both constituting the capital stock.

5. When one partner seeks, by way of recoupment, to have a deduction made from the amount of the claim of the other in the profits, on account of fraud or neglect, or acts of disloyalty to the partnership, whereby the interest of the firm suffered damage, such deduction cannot go beyond the amount of damage proven.

6. Though the Court may make an unauthorized remark in reference to a question asked a witness, yet, if the testimony in connection therewith be on a matter which, under the whole evidence, could not have availed the party complaining, it is not such an error as will call for a new trial.

New trial. Auditor. Judgment. Exception. Partnership. Interest. Recoupment. Damages. Immaterial error. Before Judge GIBSON. Richmond Superior Court. October Adjourned Term, 1872.

Land filed his bill against Tutt alleging that complainant and defendant formed a copartnership in the drug business, in the city of Augusta, on July 1st, 1868, which continued until October 31st, 1870, the terms of which were reduced to writing. That complainant was to receive one-quarter of the profits and defendant three-quarters; that the defendant, at the dissolution, agreed to account with him for his share of the large profits which had been made, but had failed to do so; that defendant is indebted to complainant about $10,000 00, and refuses to account. Prays discovery, relief, etc.

The defendant answered substantially as follows: That he admitted the partnership as charged; that the articles are in writing and in his possession; that the profits were to be divided as alleged; that he formed said co-partnership on account of his belief in complainant's integrity and business tact. Admits the duration of the partnership as alleged; charges that complainant left without his consent and without any notice; that by his dishonest acts and attempts to decoy custom from their house to one in the same business, in which he contemplated becoming, and did subsequently become, a partner, and by other dishonorable acts, he defeated the sole consideration of the contract; that by his sudden departure he greatly injured defendant. Alleges that complainant violated his agreement in said articles, not to draw but $2,000 00 per annum,

Tutt *vs.* Land.

but did draw in the two and a quarter years out of the partnership, $6,381 08. Denies that he is indebted to complainant as alleged, stating that after deducting expenses of closing up business, bad debts, etc., there would remain to complainant's credit $1,393 95; and that, owing to said bad faith and dishonesty, he has sustained damages, which recouped leaves nothing due, but makes complainant his debtor. Answers prayer for discovery:

1st. That the articles were in writing, accessible to complainant and in defendant's possession.

2d. That the profits during the continuance of the business were $45,561 35, of which complainant's share would be $11,390 35; deduct amount drawn out, leaves due him, $3,028 04; from which is to be deducted his share of the expenses of winding up the business and his proportion of the bad debts.

In said answer defendant makes certain allegations in the nature of a cross-bill, alleging that he furnished all the capital; that the consideration moving him to take complainant into partnership was his reliance on his honesty and business tact; that this consideration failed on account of his dishonest acts—his dishonorable conduct in turning business from the house to another drug store in said city, in which he contemplated and soon after did become a partner; his misrepresentations that defendant ordered him to adulterate drugs; his outspoken assertions that he intended to "burst up" the concern; his dishonesty in taking goods from the store without charging them to himself, etc.

To this answer and cross-bill complainant filed his answer, denying all acts of bad faith or dishonesty, and claiming that by his exertions the business was greatly increased; denies contemplating any other business connection while in said copartnership, and admitting that subsequent to the dissolution, he did enter into a partnership in the same city, and the same line of business with one Barrett; claims that Tutt injured the business by his neglect, and lays his damage at $10,000 00.

At the January term, 1872, the following order was passed:

Tutt *vs.* Land.

" It appearing that there are questions of complicated account in the above cause, it is ordered, that Joseph B. Cumming be, and he hereby is, appointed auditor, to investigate the matters upon said accounts, and all matters touching the allegation in cross-bill of defendant, with power to subpœna witnesses, administer oaths and hear testimony on any disputed fact or facts, and with other powers usually and customarily conferred on masters in chancery in like cases."

On June 1st, 1872, the auditor filed his report in the clerk's office. It was in substance, as follows:

1st. That the allegations in the cross-bill, to the effect that the character of the house was injured by the bad faith of complainant, is not sustained. It appeared that some few customers were offended in the course of their business transactions with the house, but such offense was not shown to have been fairly attributable to complainant, or if attributable to his bad conduct, such conduct did not appear to have been conceived either in bad faith to his copartner or to his customers, but in zeal for the common business.

2d. The allegation that during the continuance of the partnership the complainant conceived the idea of going into business with another party, and commenced decoying patronage from the house, is unsustained by the evidence.

3d. The charge that complainant, in pursuance of a scheme to divert business from the house, made improper charges for articles, false representations of the character of the drugs, and malignant insinuations that defendant had ordered the adulteration of the drugs, is wholly unsustained by any evidence, except so far as it is shown that a higher price than usual was charged for a quantity of quinine, but this does not appear to have been done by complainant in any bad faith to his copartner, and is reasonably explained.

4th. As to the allegation that complainant took money and articles from the store without accounting for them, evidence was adduced that there were irregularities in the cash, and that circumstances of suspicion pointed to the complainant as the person producing these irregularities, and that he, as well

Tutt *vs.* Land.

as other persons, was suspected. The amount of cash abstracted, if any, is nowhere ascertained. There is an entire lack of any such certainty, both as to the amount taken (if any) and the taker, as would enable an offset to be established. There is no evidence going to show that articles other than cash were taken.

5th. As to the allegation that by these means the business was injured to the extent of $10,000 00, the auditor reports that the evidence fails to show any damage accruing from the conduct of complainant.

This disposes of the charges contained in the cross-bill. As to the issues formed by the bill and answer, the auditor reports, in substance, as follows :

1st. The deduction of ten per cent. on account of depreciation of merchandise, to be taken from the profits, as claimed by defendant, is not allowed. This item is $4,098 17.

2d. The deduction from value of fixtures, on account of depreciation, to be taken from the profits, as claimed by defendant, is not allowed. This item is $2,170 99.

3d. The auditor finds that no interest is chargeable against complainant on account of capital put into the business by the defendant, and disallows the deduction claimed from the profits on that account. This item is $1,489 48.

4th. The auditor disallows the deduction from the profits, claimed by the defendant, on account of the keep of a house which had belonged to the partnership, from November 5th, 1870, to March, 1871, for the reason that the house was turned over in November, with the other assets of the firm, to the defendant, and became, from that time, his property. This item is $85 87.

5th. The auditor allows the deduction from the profits of the amount paid the book-keeper, Connor, for extra services in winding up the partnership accounts. This item appears to have been paid to him by the defendant, in good faith, for such services. It amounts to $700 00.

6th. With these allowances and disallowances the auditor finds that there is due from defendant to complainant, for his

one-fourth share of the profits for the twelve months ending June 30th, 1869, the sum of $5,974 51. For his one-fourth share of the profits for the twelve months ending June 30th, 1870, the sum of $5,522 96. For his one-fourth share of the profits for the four months ending October 31st, 1870, $192 61. From the total of these sums is to be deducted the aggregate amount drawn out by defendant for the support of himself and family, to-wit: $6,567 09. This sum is increased by interest on $231 00 from July 1st, 1869, to date of dissolution, and on $986 08 from July 1st, 1870, to date of dissolution. This interest is charged on the excess over $2,000 00 per annum, which complainant drew out of the business, he being limited to that amount. The amount drawn out of the business by complainant is, therefore, principal, $6,567 09, interest, $38 97, total $6,606 06. This sum taken from $11,690-08, the amount of complainant's share of the profits, leaves due to him the sum of $5,084 02.

This sum, with interest from the date of dissolution, is, in the opinion of the auditor, the indebtedness of defendant to complainant. A portion of the profits is represented by choses in action, to-wit: about $3,500 00, and the auditor finds that complainant should take in part discharge of his claim, one-fourth of these choses in action, fairly selected.

The auditor further reported that the solicitors for defendant had presented a protest against the powers exercised by him, in going into the hearing of the case upon the allegations made in the pleadings, which protest was overruled and filed with the report.

Said report was excepted to, in substance, as follows:

1st. Because the Court had no authority to appoint an auditor and to confer on him such powers as the auditor exercised in this case, without the consent of the parties.

2d. Because the auditor erred in overruling the protest referred to in the report.

3d. Because the auditor reports that all the allegations in the cross-bill are unsustained, when he had no authority to

Tutt *vs.* Land.

pass on such questions; and further, because the evidence, when before the Court, will sustain every allegation.

4th. Because the auditor disallowed the ten per cent. on account of depreciation of stock, which per cent. the defendant claimed had been the amount of depreciation in the stock and should be deducted from the profits.

5th. The auditor further erred in stating the amount of that item to be $2,170 99; it should have been about double that amount, to which disallowance and erroneous calculation defendant as aforesaid excepts.

6th. Because the auditor disallowed interest on the capital put into the business by defendant, and assumed in his report that the articles of copartnership justified this disallowance; whereas, it is respectfully submitted that this part of the report is clearly based upon a misapprehension of both the spirit and the letter of the contract of partnership.

7th. Because the auditor, after considering the allowance and disallowance mentioned by him, reports a balance due of $5,084 02, from defendant to complainant, which finding and report is hereby excepted to as erroneous, for reasons heretofore stated, and for further reason that it seems to leave out of the calculation the $700 00 paid for extra services to Conner, the book-keeper, which the report elsewhere admits should be allowed to defendant.

The Court overruled the exceptions so far as to allow the report to be read to the jury. The trial then proceeded upon the issues formed by the report and the exceptions. The evidence introduced was voluminous, but is unnecessary to an understanding of the decision. The articles of copartnership under which the complainant and defendant did business, were, in substance, as follows:

1st. Form partnership in the firm name of "William H. Tutt and Land."

2d. Tutt contributes $29,815 00 in stock.

3d. Land devotes time, labor and skill to business.

4th. Profits shall be divided as follows: three-fourths to Tutt and one-fourth to Land.

5th. Profits shall only be reckoned after deducting all expenses of the business, among which is included the sum of $2,500 00 per year to be paid to Tutt for rent of store.

6th. Gives power to Tutt to terminate business connection at any time by giving thirty days notice to Land, and upon settling with him upon the basis above set forth.

7th. Provides for keeping books.

8th. Provides that if the business requires an increase of capital at any time, and the same should be supplied by Tutt, the firm shall pay him therefor the same interest, commissions and charges as the banks of the city of Augusta ask and obtain for like accommodation.

9th. Prohibits either member from indorsing or becoming surety during continuance of firm.

10th. Prohibits Land from drawing from the assets a larger sum than $2,000 00 per annum, or a proportionate amount thereof for a less term than a year. Any surplus that may be due him as a part of his one-fourth interest in the profits, to remain in the business as capital until the dissolution.

The evidence showed that at the expiration of the first year's operations, defendant left in the business, of his share of the profits, $19,817 98. This was done without any notice to, or agreement with complainant, that the capital was to be thus increased.

The jury returned the following verdict: "We, the jury find that no interest is due to respondent upon the capital stock paid in by him, or upon any advances made during the partnership, nor any damages to be deducted from the amount of profits due complainant. We find the amount due complainant to be $5,084 00, less $275 00, his proportionate share of the auditor's fee and the amount paid to Connor; $822 00 of said remaining balance due, to be paid in notes and accounts due said firm of Tutt & Land, the same to be selected on the plan designated by the auditor, and by said auditor, and if refused by respondent to be thus distributed in ten days, then to be paid by him in greenbacks; that is to say, we find for complainant $4,809 00, $822 00 to be paid

as above specified in notes and accounts to be selected by the auditor within ten days, or greenbacks."

The defendant moved for a new trial upon the following grounds:

1st. Because the verdict is contrary to the evidence and the law.

2d. Because the verdict is decidedly and strongly against the weight of the evidence.

3d. Because the Court erred in refusing to hear counsel for defendant: 1st. Upon his protest against the auditor's exercising the functions and powers conferred upon him by the order of Court appointing him. 2d. Upon the exceptions filed to the auditor's report after it was made and returned into Court, the Court not only refusing to hear argument against the admissibility of the auditor's report, but also ordering it read as a part of the pleadings in the case to the jury, then adjourning the Court over until next morning.

4th. Because the Court erred next morning in refusing, upon the opening of the Court, to hear argument either upon said protest or exceptions, and in saying that he would submit the following points arising from that report to the jury, to-wit:

The questions to be submitted to the jury—

First. Did the respondent sustain damage by the conduct and management by complainant of the business of Tutt & Land, and how much?

Second. Should ten per cent. be allowed for depreciation of the value of the stock on hand? If so, what sums? Also consider the allowance asked for depreciation of furniture.

Third. Should interest be allowed on the cash furnished to said business by respondent?

Fourth. Is $5,084 00 the balance due complainant from respondent, after a full and fair accounting, or is he indebted to respondent?

It is respectfully submitted that this was error for the following reasons: 1st. Because it left the auditor's report before the jury with all the weight of the high character of the au-

Tutt *vs.* Land.

ditor in support of it; and that report passed upon every question of the case, whether of law or evidence—a power which, as auditor, he could not exercise, even under the order of the Court, because the Court had no power to grant such an order. 2d. Because it limited the jury to four stated exceptions or questions, so presented by the Court, and denied to the defendant the right to have all his exceptions passed upon by the Court and jury *seriatim*.

5th. Because the Court erred in refusing to hear counsel for defendant who proposed to show that the order of the Court appointing the auditor, was illegal and invalid for want of rightful authority, as well as the action of the auditor under and by virtue of it—and in sending the auditor's report before the jury, first as pleadings and then as evidence.

6th. Because the Court erred in the following remark: When defendant's counsel asked of one of his witnesses, to-wit: George D. Connor, if he ever heard Land express any desire in regard to what Dr. Tutt should do with his share of the profits of the business—the witness answered yes, that he had heard Land say he wished the doctor (Tutt) would draw out his profits. Whereupon the opposite counsel moved to strike out the whole testimony, which had been before admitted to show that Land knew and acquiesced in the fact that Tutt's share of the profits had been and were being added constantly, as new capital in the concern. The Court refused the motion to strike out, but in so doing remarked, "I'll not rule out the testimony, but the question of defendant's counsel was an unfortunate one."

7th. Because the verdict was contrary to the charge of the Court in this, that the Court charged the jury as follows:

"The jury must find against that part of the report of the auditor which disallows interest on the new capital, if, from the evidence, it appears that the profits, or any part thereof, due Dr. Tutt, were used in the business of the partnership, and on this part they must find interest."

The evidence showed abundantly and beyond dispute, that the profits accruing to Tutt, which were quite large, were put

into the business, and the contract of partnership showed that interest was to be paid thereon.

8th. Because the Court erred in refusing to give the fifth request to charge of defendant, which was duly submitted in writing: "If the jury believe, from the evidence, that the plaintiff has failed to comply with the obligations arising under the same contract, then they must estimate and allow the defendant to recoup the damage he has sustained thereby; and in estimating the damages, they are not bound to find only the amount actually discovered and shown by the defendant, but may exercise their own discretion and find such damages as they may reasonably consider, from the light of the evidence, has resulted from the neglect or fraud of the plaintiff."

9th. Because the verdict is contrary to the charge of the Court, in this, that the Court charged the jury as follows: "If you find there was a depreciation of the stock proven, the Court charges you that this is a proper charge upon the copartnership assets, before net profits can be declared, and this is also true of the depreciation of the fixtures, if you find such depreciation to exist."

10th. Because, before this, and during the progress of the trial, the Court erred in instructing the jury, "that, although the articles of copartnership provided interest on the new capital, at bank rates, which were shown to be nineteen per cent. in Augusta, yet they could allow but seven per cent."

The motion was overruled, and a new trial refused. Whereupon the defendant excepted upon each of the grounds aforesaid.

HOOK & GARDNER; W. H. WEBB, for plaintiff in error.

McLAWS & GANAHL, for defendant.

TRIPPE, Judge.

1. No exceptions were certified by the Judge and entered of record, when the order appointing the auditor was granted. It was too late to raise the objection to the appointment, when

the auditor proceeded to act under the authority conferred, or to make such objection the ground for excepting to his report: New Code, sections 4250, 4254.

2. The contract of partnership was, that one partner should furnish the stock of goods then on hand, and the other should render his skill, services, etc.  It was further agreed that the first should have three-fourths of the net profits, and the second the remaining fourth.  Under such a contract the partner furnishing the capital is not entitled to interest on the stock when a division of the profits is made.  We can see no reason for such a claim.  Such partner gets all the profits by the contract that are made on three-fourths of what he puts in the concern.  The other fourth was intended as a set-off to the skill, time and services of the other partner, and the profits thereon to be his compensation.  To hold as claimed by plaintiff in error, would give that other partner the net profits on one-fourth, *less the interest thereon.*  Such was not the contract.  Net profits of an adventure do not mean what is made over the losses, expenses and *interest on the amount invested.*  The term includes simply the gain that accrues on the investment, after deducting the losses and expenses of the business.  If but two or three per cent. is realized on the amount put in, it may be a poor business, but still there would be net profits, even if the legal rate of interest were ten per cent. or greater.

3. It was further stipulated in the artices of partnership that if the necessities of the business required an increase of capital, and the same be supplied by the partner who furnished the original stock, the firm should pay him interest therefor at a certain rate.  At the end of the first year the amount of profits and the share of each partner was ascertained.  It was not agreed that there was any necessity for an increase of the capital of the firm.  Nor was there any understanding that it was increased.  The partner entitled to draw the largest share of the profits simply permitted a portion of it to remain.  No notice was given to the other that the rights of the firm attached to said undrawn portion.  It was sub-

Tutt *vs.* Land.

ject at any time to the owner of·it.   He never parted with
his individual right to it, by making it a part of the firm
capital.   It never was subject to the terms of the partnership
agreement, so as to give the other partner any authority to
contest whatever right the owner might be pleased to assert
over it.   Had he desired to have taken it at any moment he
could have so done, no matter what the immediate interests of
the firm might require.   This right would not have existed
if it had been regularly made a part of the capital stock.
And it would be manifestly unjust that he should have had
the power, at pleasure, to make an individual appropriation
of a large amount, and at the same time claim a heavy inter-
est for whatever time he might not see fit so to appropriate it.
Besides, the contract specially provided that Land, the work-
ing partner, so to call him, should only be entitled to draw a
specific portion of his share of the profits.   The balance of
his interest was to remain in the firm.   By the contract it was
to become part of the capital.   As this increase was directly
provided for, and as it was also expressly contracted for a fur-
ther increase, if necessity demanded it, such increase, if made,
should not be left to the mere discretion of one partner to de-
termine as he might choose at any time, whether or not his
undrawn portion of the profits had become an addition to the
firm capital on which he was entitled to both profits and in-
terest.

4.  The goods and fixtures constituted the stock furnished
by Dr. Tutt.   At the dissolution he claimed that there was a
depreciation of the stock, and that he should be paid for it.
It was not pretended that the value was lessened by reason of
damage or injury from accident or other special cause.   Had
it so been, there might, probably be force in the question
whether it was not a claim under the head of losses, and
therefore properly chargeable to the firm.   But it appeared
that it was only the ordinary, natural depreciation that may
occur in all things.   At the time the partnership was formed,
the value of the stock was ascertained, inserted in the articles,
and it was agreed that Dr. Tutt should keep that sum in

the business for the use of said firm during the continuance of the partnership, "and that the said sum of money or its equivalent in stock of goods is to constitute the capital to be used and employed," etc.  We do not think that under this contract the partner who furnishes the stock, can, at the dissolution, claim for the ordinary, natural decrease in value of the goods.  That is a risk or incident which attaches to his property, and is doubless an item considered and passed upon by the party who invests his capital in that form, when he enters into such a contract.  If A and B were to form a partnership for farming purposes, A to furnish the land, and horses and mules for ploughing, and B his skill, labor and superintendence, and the profits to be divided equally or in any given ratio between them, could A, at the end of two years or other period, when the dissolution might take place, claim compensation for the decreased value of his horses or mules on account of their increased age, or for the wear and waste of his land from time and cultivation, etc.?  It would scarcely occur to the mind of any one that such a right existed on the part of A, unless it was so specified "in the bond."  Another item in this contract settles this question, as well also as the question of the right of Dr. Tutt to claim interest on his original capital.  That item is: "It is agreed between the parties that the said gains, increase and profits shall only be reckoned, after deducting all *expenses of the business*, among which expenses is included the sum of $2,-500 00 per year to be paid to the said W. H. Tutt for rent of the store on Broad street, supplied by him to the partnership for carrying on the business."  The proper construction of this item excludes the idea of his claim for such interest, and for the ordinary depreciation of the stock he contributed.  As well might it be asserted for the depreciation by time and use of the house, for that was also supplied by him to the firm.

5. Plaintiff in error further sought, by way of recoupment, to have a deduction made from the claim of Land in the profits, on account of alleged fraud, neglect, and acts of disloyalty to the partnership by Land.  The Court charged, in

substance, that this could be allowed by the jury to the extent of damage proven. We do not think the charge should have gone further. A jury should have a measure of damages furnished by the evidence, especially for a breach of contract. They cannot go out into a field of speculation as to what the damages may probably be. Land was not suing for his *services* on a *quantum valebat,* or on a contract for a stipulated sum as their value. It was for a claim to property. Had it been for services as clerk, and he had violated his contract as a clerk or servant, the question would be presented, whether the breach on his part was not a forfeiture of all claim under the contract. But it cannot be the rule that one partner can set up that the other has been false to duty, and thereby he can claim all the assets, capital and profits. He may recoup or claim for damages ; but must show what the damages are.

6. The remark made by the Judge, at the trial, which is excepted to by plaintiff in error, was upon a matter which, under the whole evidence, could not have availed the party complaining. Strike out the answer of the witness, about which the remark was made, and under the view we have taken, the decision must be the same. Whether it was unauthorized or not, no legal injury could have resulted from it.

Judgment affirmed.