HOUSTON *et al. v.* POLK, and *vice versa.*

1. In the absence of an agreement to that effect in the contract of partnership, a partner is not liable, upon an accounting subsequently to the dissolution of the firm, for depreciation in the value of the manufacturing plant which is the subject of the partnership; but the loss caused by such depreciation must be borne by the partnership.

2. A partner is not liable to his copartners for losses caused by his lack of judgment or discretion, unaccompanied by actual negligence or bad faith.

3. In a suit by a partner against two surviving partners, for an accounting and for judgment for his proportionate share of the net profits of the concern, where it appeared that the plaintiff's interest in the firm had been purchased by one of the other partners, subject to such an accounting, it was not error to allow an amendment setting up that the remaining partner, while not a party to the contract of sale referred to, knew of its existence and acquiesced in its execution.

4. The present case was an equitable action, and it was not error to refuse to refer to a jury the exceptions of fact to the auditor's report.

5. It does not appear that the trial judge erred in taxing one half of the costs against the plaintiff in the court below.

Argued October 6,—Decided November 9, 1905.

Exceptions to auditor's report. Before Judge Roan. DeKalb superior court. August 26, 1905.

The plaintiff's petition alleged, in substance, that on March 29, 1902, he entered into a contract of copartnership with the defendants, W. J. Houston Sr. and W. J. Houston Jr., for the construction and operation of an electric light and power plant near Decatur, Ga.; that this contract remained in force until April 10, 1903, "when petitioner sold out his interest in the same to W. J. Houston Sr., but reserved in said sale his interest in the net profits of the business up to the date of the sale, which were afterwards to be adjusted;" that the operation of the business from March 29, 1902, to April 10, 1903, had resulted in net profits, or excess of income over operating expenses, of $618.05, of which plaintiff's share was $309.02; that plaintiff was indebted to the partnership $84.80, leaving as the balance due him by the defendants $266.62; that he has made frequent and earnest efforts to adjust with the defendants the amount due to him under their agreement, but has been unable to do so; and that they have ignored his demand for payment of the amount due him. Waiving discovery, he prayed for an accounting between himself and the defendants, and for judgment for $266.62, besides interest. Copies of the contract of partnership and of dissolution were attached to the petition as exhibits, as well as a statement of accounts which it was alleged the plaintiff had rendered the defendants, showing the balance claimed to be due him. The contract of dissolution was as follows:

"Georgia, Fulton county. Whereas W. R. Polk Jr., W. J. Houston, and W. J. Houston Jr. entered into a contract of copartnership on the 29th day of March, 1902, for the purpose of constructing and operating an electric lighting plant in the town of Decatur, DeKalb county, Ga.; and whereas differences have arisen between said parties as to the operation and conducting of the business of said partnership, and it is desired by said Polk and the other parties to said contract that their differences be adjusted and compromise reached without resorting to the courts:

"It is therefore mutually agreed between the said W. J. Houston and the said W. R. Polk Jr. that the said W. R. Polk Jr. will sell to the said W. J. Houston all his right, title, and interest in and to the plant erected by said parties, also all stock that he may claim to own in the Decatur Electric Light, Power and Water Company which is referred to in said contract of partnership, and that he will cancel said articles of partnership; that he is to reconvey to said W. J. Houston, free from encumbrance, the one-half undivided interest heretofore conveyed by said Houston to said Polk in and to the land upon which said plant is constructed, known as the Houston Mill place in DeKalb county; also all right, title, and interest that he may have or claim in and to the franchise granted by the town of Decatur to W. J. Houston and W. J. Houston Jr., for the purpose of constructing said plant.

"The said W. J. Houston, in consideration of the performance of the above stipulations by said Polk, is to pay said Polk the sum of two thousand and thirty-three and 31/100 dollars ($2,033.31), and is to pay the unpaid bills for construction, which [it is] hereby agreed by the parties hereto amount to the sum of fourteen hundred, thirty-five and 53/100 dollars ($1,435.53), this being the balance ascertained by the parties hereto, after a careful calculation, as due various parties for material and supplies furnished in the construction of said plant. Said Houston is also to pay the note of fifteen hundred dollars ($1,500.00) given by said Polk to Atlanta National Bank, same being jointly signed by the said Houston. Said Houston is also to surrender to said Polk two notes, one for one thousand dollars and one for fifteen hundred dollars, given by said Polk to said Houston as purchase-money for half interest in above described land. Said Houston is also to surrender to said Polk the four hundred dollar Durham note.

"The above contract has been fully complied with, April 14, 1903.

[Signed] W. J. Houston.

[Signed] W. R. Polk Jr."

"The above contract is understood by the parties hereto as not in any manner applying to any net profits that may have accrued from the operation of said plant, but only to the plant, land, franchises, and partnership dissolution, the question of profits up to April 10, 1903, remaining open for adjustment. April 10, 1903.

[Signed] W. J. Houston.

[Signed] W. R. Polk Jr."

By amendment the plaintiff alleged that W. J. Houston Jr. was the son of W. J. Houston Sr.; that Houston Jr. was fully cognizant of the contract of dissolution between the plaintiff and Houston Sr., was present at various conferences at which the terms and conditions of the contract of dissolution were discussed, actively advised and consulted with Houston Sr. in regard thereto, and agreed to the terms and conditions of the contract. The amendment also made certain changes in the account sued on, which it is not necessary to set out now. The defendants filed an answer, in which they admitted the contract of partnership and that of dissolution, but denied that they were indebted to the plaintiff. They denied that the business had yielded any net profits up to April 10, 1903, and averred that on the contrary it had sustained losses, for a proportionate share of which the plaintiff was liable. They claimed that certain items of expense were chargeable against the receipts of the business which more than offset the amount claimed by the plaintiff, to wit: (*a*) ten per cent. per annum on the cost of construction of the plant necessary to be set aside out of the receipts of the business for the purpose of rebuilding the plant when it is worn out, amounting in the present case to $246.58 for the time the plant had been in operation up to the dissolution of the partnership; (*b*) the cost of installing a new water-wheel in the plant, amounting to $416.67, made necessary by the fact that the plaintiff, who was relied upon as a skilled mechanic, installed in the plant a water-wheel which was not adequate for the purposes of the business; (*c*) the cost of replacing incandescent electric lamps in the plant, amounting to $44.95, immediately after April 10, 1903; (*d*) the cost of replacing a flour and corn mill (amounting to $67.50) which the plaintiff had dismantled in the construction of the electric plant, and which he had never replaced, though agreeing so to do; (*e*) the amount of $103.11 collected from the town of Decatur for the partnership for lighting the town, and for which he had never accounted. By amendment the defendants set out other items of expense, which it is not necessary to enumerate here, which they claimed should be charged against the receipts of the partnership. The case was submitted to an auditor, and at the hearing before him the plaintiff demurred to so much of the answer as sought to set off against his claim a proportionate part of the cost of construction of the plant, of installing a new water-wheel, of replacing incandescent electric

lamps, and of replacing the flour and corn mill; the grounds of demurrer being that they furnished no basis for a recovery by the defendants against the plaintiff, that they were contemplated and adjusted by the contract of dissolution of the partnership, and that the averments were insufficient in law. This demurrer was sustained by the auditor, and the paragraphs which they attacked were stricken from the answer. The auditor in his report set out a detailed statement of the accounts between the plaintiff and the defendants as found by him from the evidence, and concluded that "the defendants are indebted to the plaintiff in the sum of two hundred and twenty-five 22/100 dollars, with legal interest thereon from April 10, 1903." The defendants filed exceptions of law and of fact to the report of the auditor. These exceptions were overruled, and the auditor's report was made the judgment of the superior court, with direction that the plaintiff should pay half the costs of the suit. The defendants excepted to the overruling of their exceptions of law to the auditor's report and to the refusal of the judge to submit to a jury their exceptions of fact; and the plaintiff filed a cross-bill of exceptions, in which he assigned error upon the judgment requiring him to pay half the costs.

*Green, Tilson & McKinney,* for Houston et al.
*Henry A. Alexander,* contra.

EVANS, J. 1. In the brief of counsel for the plaintiffs in error in the main bill of exceptions it is urged that the demurrer to the answer should have been overruled, because, being in the nature of a special demurrer, it could not be filed after the first term. It appears, however, that no such point was raised in the exceptions to the auditor's report which assigned error upon the sustaining of the demurrer, it being contended merely that the paragraphs of the answer attacked were legally sufficient to withstand the demurrer; and the question as to whether the demurrer was properly sustained must be decided on the points made in the exceptions to the auditor's report and passed upon by the court below. We have no hesitation in holding that the Houstons were not entitled to charge against the share of the net profits due Polk any proportion of the amount estimated as representing the depreciation in value of the plant and machinery of the partnership. Conceding that an electric lighting and power plant will, as contended, wear itself out

in ten years, we fail to see how it can be said to follow, where such a plant is owned and operated by a partnership, that the burden of this depreciation should be borne by one partner to the exclusion of the others.   If this item of depreciation was a legitimate charge against Polk, it was an equally legitimate charge against the Houstons, and the account between them on this score stood balanced. It is not contended that this claim grew out of any special agreement between the partners made when the partnership was formed; or that any such agreement existed.   The case of *Tutt* v. *Land,* 50 *Ga.* 339(4), is directly in point; and while counsel for the plaintiffs in error made a provisional request that this case be reviewed, we can not see any good reason why it should be disturbed, as it seems to us to be founded on sound reason and unanswerable logic.   It was there held that where a mercantile partnership was formed, one partner furnishing the stock of goods and the other his skill and services, on a dissolution of the partnership the former was not entitled to claim for the ordinary, natural depreciation of the goods and fixtures of the store.   The case of *Park* v. *Tennille,* 20 *Ga.* 118, with which it is contended that *Tutt* v. *Land* is in conflict, is not in point.   No question of the settlement of partnership accounts was even remotely involved.   It was merely decided that where, by the terms of a marriage settlement, the husband had a title to the "annual increase or profits" of a plantation, without the power to dispose of the corpus of the estate, the phrase quoted, in order to give effect to the evident intention of the instrument, should be construed to mean the net rather than the gross profits, and that creditors of the husband could not levy upon crops which constituted the gross profits of the plantation.   We fail to see how this decision in any manner stands in the way of the decision in *Tutt* v. *Land,* supra, or what possible bearing it has upon the case now under consideration.

2. The portion of the answer in which it was sought to set off against the plaintiff's demand a claim for the cost of installing a water-wheel after the partnership had been dissolved was in the following language:   "That it has been necessary for defendants to instal a new water-wheel in said plant since the construction of the same by said Polk, at a cost of $416.67, which is a proper charge against the said Polk and against said receipts, because defendants . .   relied on said Polk as a skilled mechanic for the proper con-

struction of said plant. But instead of using the proper skill and judgment in the construction of said plant, which defendants expected of said Polk, said Polk installed a water-wheel, over the protest of defendants, in said plant, which was entirely too large for the power of the stream, and did not yield for consumption by the machinery the amount of power that should be obtained from a stream carrying the volume of water carried by the stream in question. The placing of this wheel in said plant, and the consequent necessity of replacing it by a new one in so short a time after the construction of said plant, was due entirely to the negligence and want of skill in said Polk, who represented to defendants that he was entirely competent to properly construct the plant in question, and the cost of said new wheel is a proper charge against said Polk, as the same is a direct damage to defendants." It will be observed that there is no charge that Polk was guilty of bad faith in the part that he took in the installation of the original water-wheel. Indeed the averments distinctly negative the idea of fraud or bad faith, and place the entire blame for the alleged damage done upon the lack of judgment and skill of the plaintiff. It is well settled that for such damage occasioned by the act of a partner the firm itself is liable, and the individual partner can not be held to respond. See 22 Am. & Eng. Enc. L. (2d ed.), 128 (10 b), where the principle is announced that "A partner is not solely liable for losses caused merely by his lack of discretion or good judgment, not amounting to negligence or bad faith, but the loss in such cases must fall upon the partners as a firm." While, in the present case, the answer averred in general terms that the plaintiff had been negligent in installing the original water-wheel, the other averments in the same paragraph distinctly negative this idea; for it affirmatively appears that the expediency of installing a wheel of the size described was called in question at the time of its installation; that the plaintiff and the defendants differed on the subject; that the defendants relied upon the supposed superior skill of the plaintiff, and that whatever error he committed was one purely of discretion and judgment. Indeed it was not claimed that there was any negligence in installing the wheel, but merely that through a mistake of judgment the plaintiff installed one that was too large for the purposes for which it was intended. We are clear that there was no error in striking this paragraph of the answer.

3. It is contended by counsel for the Houstons that the amendment to the plaintiff's petition, in which it was alleged that W. J. Houston Jr. was cognizant of the contract of dissolution between the plaintiff and Houston Sr. and agreed to the terms of the contract, should not have been allowed, because its effect was to bind Houston Jr. by the terms of a contract to which he was not a party. In view of all the allegations of the petition, as well as the contract which was made an exhibit thereto, we do not think this contention is well founded. On its face the contract was merely one whereby Houston Sr. purchased from Polk the interest of the latter in the partnership. Apparently, Houston Jr. parted with nothing and acquired nothing by this instrument. But in a suit by Polk against the surviving partners for his share of the net profits under the terms of the original partnership agreement, it was certainly not amiss to allow him to allege and prove that his withdrawal from the firm was with the full consent and acquiescence of all the partners —not for the purpose of holding Houston Jr. as a party to the contract or of binding him to perform any of its terms, but to show the entire mutuality of all the parties to the dissolution, and to negative the idea that by reason of any concealment from Houston Jr., of the existence of the contract, he was not bound to account to Polk for his share of the net profits of the concern.

4. There was no error in refusing to submit to a jury the exceptions of fact to the auditor's report. While an accounting may be had at law as well as in equity, an accounting between partners, such as the one in the present suit, where various demands and cross-demands are set up between the parties, is peculiarly a subject for equity jurisdiction. Civil Code, § 3989; *Hogan* v. *Walsh,* 122 *Ga.* 285.

5. This being an equity case, the question raised by counsel for Polk in the cross-bill of exceptions, whether the court erred in taxing one half the costs against him, depends solely upon whether the trial judge abused the discretion vested in him. Clearly, this does not appear, and we therefore hold that the assignment of error in the cross-bill is without merit. Civil Code, § 4850; *Guernsey* v. *Phinizy,* 113 *Ga.* 898.

While numerous questions were raised by the exceptions to the report of the auditor which have not been discussed, they were not argued in the brief of counsel; and under the uniform practice of

this court these contentions must be treated as having been abandoned. We find no error requiring a reversal of the judgment on either bill of exceptions.

*Judgment on both bills affirmed. All the Justices concur.*