### McCONNELL *v.* STUBBS *et al.*

1. In a case which was referred to an auditor, where an issue was made by the pleadings and the evidence, and was passed on by the auditor, there was no error in allowing, after the filing of the report, an amendment which introduced no new issue but simply adjusted the prayer of the petition more specifically to the finding of the auditor and the evidence submitted to him.

2. If further consideration by the auditor became necessary, a motion to re-refer the case to him could be made. But where the only motion for a re-reference was based, not on any desire to introduce further evidence, or to make further defense, or because of any change in status arising from an amendment which had been made, but solely on the ground that the auditor had not taken the oath prescribed by statute at the proper time; and where an answer was filed to the motion, alleging that counsel for both parties had distinctly waived the taking of the oath by the auditor before beginning the hearing, and that he acted on such agreement

in respect to the delay in so doing; and where the court heard evidence on the subject (which is not brought to this court), the refusal of a re-reference furnishes no ground for a reversal.

3. While ordinarily, in the absence of an agreement to that effect in the contract of partnership, a partner is not liable on an accounting, subsequently to a dissolution of the firm, for a depreciation in the value of the manufacturing plant which is the subject of the partnership, but the loss caused by the depreciation must be borne by the partnership, under the contract involved in this case and the circumstances disclosed by the evidence the plaintiffs were entitled to an accounting for one half of the net profits as of the date fixed in the contract for them to retire and receive such profits.

4. Where partners had a common interest in the assets, business, and profits of the firm, but on a proceeding for an accounting under the contract between them one partner sought, by way of recoupment, to have a deduction made from the amount of the claim of the other in the profits, on account of neglect or refusal to discharge certain duties, whereby the interest of the firm suffered damage and extra expenses were incurred, such recoupment could be set up, but the deduction could not go beyond the amount of damage proved.

5. Several of the exceptions to the auditor's report are not sufficient in form, but from an examination of the entire record no error requiring a reversal appears.

Argued December 6, 1905.—Decided February 21, 1906.

Exceptions to auditor's report. Before Judge Kimsey. Habersham superior court. March 17, 1905.

S. J. Stubbs and F. B. Stubbs brought their equitable petition against J. C. McConnell, alleging in substance as follows: On March 17, 1902, plaintiffs entered into an agreement with McConnell, forming a limited partnership for the manufacture and sale of lace leather. The contract attached to the petition provided, that they agreed to enter into a limited partnership; that McConnell, in consideration of the furnishing by the other parties of $5,000, to be used in buying new machinery, making improvements on buildings, and paying for hides, tanning, and materials, agreed to put in the building which he then had, and the ground which it occupied, together with all the machinery, tools, and other articles on hand belonging to him, "for one half of the net profits of the business for not less than twelve months. At the expiration of the twelve months, if the parties of the second part desire to discontinue the partnership, the party of the first part agrees to give them four promissory notes for twelve hundred and fifty dollars ($1,250) each, with interest at eight per cent. per annum, the first to be due in three, the second in six, the third in nine, and the

fourth in twelve months from date; but reserves the right to pay the money instead. Party of the first part agrees to keep books, invoices, and have cashier of Cornelia Bank check out for the same. And to further secure party of the second part said company agrees to insure said plant for not less than five thousand dollars ($5,000) to be paid said S. J. and F. B. Stubbs as their interest may appear. It is also agreed and understood that said business shall be holden and responsible for said five thousand dollars put into the company by said parties of the second part." McConnell agreed to superintend the manufacture of the leather, and the other parties agreed to furnish the $5,000 as soon as it could be used advantageously in the business, and to look after the purchase of plenty of "number one spready hides." They further agreed to sell or cause to be sold all the lace leather manufactured by the company to the best advantage and to the best of their ability, without any cost to the company in buying hides and selling leather, except actual traveling expenses. They were to have one half the net profits of the business for the twelve months. McConnell reserved the right to pay back to them the entire five thousand dollars in ninety days from the date of the contract, with interest at eight per cent. They reserved the right to put in twenty thousand dollars more capital and carry out a certain contract referred to as having been drawn by one Wade and signed by McConnell, at any time after the expiration of ninety days and during the twelve months. The allegations of the petition continued thus: Plaintiffs furnished the five thousand dollars, which was used in the business. McConnell put in the building, machinery, etc., and the new machinery and material purchased with the five thousand dollars also went in as partnership assets. The business was put into operation. McConnell represented to them that he had obtained a patent on a process for manufacturing lace leather; that he had already manufactured a quantity of it; that it had found ready sale at remunerative prices; and he gave to plaintiffs the names of certain customers with whom he had established a trade, and represented that the leather was of good quality and readily marketable. They relied upon these representations in entering into the partnership and investing their money. But although as soon as the leather was manufactured they made every effort to sell it, and visited a number of cities and offered it to various dealers in such leather, it proved impossible to

find a market for it. Nearly all the former customers of McConnell, to whom he had referred them, denounced the leather as unfitted for the use for which it was intended, and refused to buy it. Being submitted to various tests, it was found inferior and unsuitable for the uses for which it was intended. They thereupon, to avoid unnecessary expense, declined to undertake further the sale of the leather, but authorized McConnell, upon his assurance that he could sell it, to proceed to do so. Acting for the firm, he had already manufactured several thousand dollars worth of the leather, and has since manufactured a large quantity of it, and, according to his statement to the plaintiffs, has sold over $11,000 worth of it. Plaintiffs are willing to account to the firm for the cost of selling it, less a reasonable amount allowed for traveling expenses. At the expiration of the twelve months provided, in the contract, plaintiffs notified McConnell that they desired to discontinue the partnership, and demanded that he give them the notes as the contract provided, but he refused to do so. They claimed the right to one half the net profits and to withdraw their $5,000, and that the assets should be bound; "and plaintiffs say their right is now perfect and their said claim is matured." McConnell has taken entire control of the plant, machinery, accounts, assets, and profits of the business, and is continuing to run it at great risk to them and to the assets, without their consent. He is collecting accounts due the firm and applying the money as he sees fit. He refuses to come to any settlement with plaintiffs, or to pay them their half of the net profits of the business, "or their $5,000 or the amount due them as aforesaid." On information and belief they charged McConnell to be insolvent. They prayed, that he be required to account to them for their interests in the business and assets; that they be paid one half the net profits of the business "and the amounts due them by said firm as aforesaid;" that their lien for $5,000 be enforced against the assets; that a receiver be appointed, and McConnell be enjoined from collecting the assets; that an auditor be appointed; that the partnership be declared dissolved; and for general relief.

The defendant admitted the making of the contract and the furnishing by plaintiffs of the $5,000 as agreed, but denied that it was used as provided for in the contract. He admitted the putting into the business of the plant, tools, etc., and the $5,000, but denied that the property belonged to the partnership, "as there is now no

partnership." He denied the allegations in regard to the impossibility of finding customers for the leather, and in regard to its character; but alleged that the plaintiffs themselves violated the contract, and failed and refused to sell the leather as they had agreed. He admitted the allegations in regard to the manufacture and sale by him of leather. He denied that the business was being run at the risk of the plaintiffs. He admitted that he refused to pay the amount which they claimed, and denied that it was correct, or that he owed them anything, and denied insolvency. By way of cross-petition he alleged, that the plaintiffs violated the contract, wilfully abandoned the business, and refused to buy hides or sell or have sold the products of the factory; that of the $5,000 which they were to contribute to the capital they used $1,500 in buying a car-load of hides which were almost worthless, resulting in a loss of at least $1,000. "And defendant submits that they are not now, nor since said abandonment [have] been in copartnership with him; that by said abandonment plaintiffs dissolved their relations with defendant." He alleged, that, by reason of the failure of the plaintiffs to comply with their contract, he lost at least $5,000 in profits, and was forced to employ a man to do traveling at a cost of about $2,500 per year; and that he suffered injury from their conduct. He prayed a judgment against them.

No receiver was appointed, but the case was referred to an auditor, who made an accounting between the parties and found that the plaintiff should recover of the defendant $5,000 principal, with interest from March 17, 1903; that up to that date there was a net profit of $2,402.38; of which one half would belong to the plaintiffs; that they were chargeable with the necessary commissions paid for having the leather sold, but as the amount was paid from the firm assets, they were due to the defendant one half of it; and also that another item should be deducted, leaving a balance due of $117.04 as the plaintiffs' share of the profits of the business. He also found for the plaintiffs certain other items which it is not material to mention. The defendant filed a number of exceptions of law and fact, all of which were overruled. The plaintiffs amended their petition by praying specifically that they should have judgment for the $5,000 with interest from March 17, 1903. The defendant moved to recommit the cause, but did not allege that he desired to introduce any additional evidence, or to make further defense, and

asked it solely on the ground that the auditor was not sworn until the day he filed his report. To this motion the plaintiffs answered that the defendant's counsel had expressly waived the taking of the oath by the auditor before the hearing of the case, stating that the oath could be taken by him at any time; that both sides waived the taking of the oath before the auditor should proceed with the hearing, and that he did take the oath in accordance with their agreement. After hearing evidence on the subject (which is not before the Supreme Court) the judge overruled the motion to recommit; and having disapproved all the exceptions, he entered a decree in favor of the plaintiffs. The defendant excepted.

*J. B. Jones,* for plaintiff in error.

*H. H. Dean* and *H. H. Perry,* contra.

LUMPKIN, J. (After stating the facts.) 1. The contract was not in dispute. The plaintiffs claimed that they were entitled to have the $5,000 repaid to them. The defendant denied it. The issue was fully made in the pleadings and the evidence, and the auditor passed on it and found in favor of the plaintiffs. The amendment introduced no new issue, but simply adjusted the prayer of the petition more specifically to the finding of the auditor and the evidence submitted to him. There was no error in allowing such an amendment. *Sterling Electric Co.* v. *Augusta Telephone Co.,* 124 *Ga.* 371; *Milner* v. *Mutual Benefit Asso.,* 104 *Ga.* 101.

2. There was no error in overruling the motion to recommit the case to the auditor. It was not based on the ground that defendant desired to introduce further evidence or make further defense, but on the ground that the auditor had not taken the oath at the proper time. It was alleged, in an answer filed by plaintiffs to the motion, that this was distinctly waived by agreement of counsel for the respective parties, and that he acted on the agreement in delaying the taking of the oath. The court heard evidence on the subject, and overruled the motion.

3. Ordinarily, "in the absence of an agreement to that effect in the contract of partnership, a partner is not liable, upon an accounting subsequently to a dissolution of the firm, for a depreciation in the value of the manufacturing plant which is the subject of the partnership; but the loss caused by the depreciation must be borne by the partnership." *Houston* v. *Polk,* 124 *Ga.* 103. In the pres-

ent case, under the contract the partnership was only to last for one year, unless continued in the manner provided for by it; and it declared that the plaintiffs should have one half of the net profits during the twelve months of its continuance. They contended that they elected to terminate the partnership and have their money returned to them, together with one half the net profits, as the contract provided. The defendant did not contend that there was a continuing partnership after that time so that the property, assets, and business were those of an existing firm. He also asserted that the partnership had terminated, but claimed that he owed the plaintiffs nothing, and in fact was entitled to a judgment against them. He retained all of the property in his hands and denied any right on their part. Under such circumstances the auditor did not err in holding that the plaintiffs were entitled to an accounting for one half of the net profits as of March 17, 1903, the date fixed by the contract. On this subject see *Miller* v. *Freeman*, 111 *Ga.* 663; Laswell v. Robbins, 39 Ill. 209; Brown's Appeal, 89 Penn. St. 139.

4. The failure of the plaintiffs to sell the leather did not result, under the facts disclosed in the evidence, in totally destroying all rights on their part for an accounting. But the consequent additional expenses should be charged against them. 2 Bates on Partnership, 780; Stegman v. Berryhill, 72 Mo. 307; Funk v. Leachman, 4 Dana (Ky.), 24; *Water Lot Co.* v. *Leonard*, 30 *Ga.* 560(4); *Lewis* v. *Chisholm*, 68 *Ga.* 40(2). In *Tutt* v. *Land*, 50 *Ga.* 340(5), it was said: "When one partner seeks, by way of recoupment, to have a deduction made from the amount of the claim of the other in the profits, on account of fraud or neglect, or acts of disloyalty to the partnership, whereby the interest of the firm suffered damage, such deduction can not go beyond the amount of damage proven." On page 353 Trippe, J., in delivering the opinion, said: "But it can not be the rule that one partner can set up that the other has been false to duty, and thereby he can claim all the assets, capital, and profits. He may recoup or claim for damages; but must show what the damages are."

5. Several of the exceptions to the auditor's report are too general in character, or fail to sufficiently set out or specify the evidence relied on to support them. But from an examination of the entire record we are of the opinion that no error was committed which requires a reversal.

*Judgment affirmed: All the Justices concur, except Atkinson, J., who did not preside.*