33950. VAUGHAN *v.* AMERICAN ASSOCIATED COMPANIES INC. *et al.*

DECIDED APRIL 11, 1952—ADHERED TO ON REHEARING JUNE 6, JULY 18, 1952— REHEARING DENIED JULY 29, 1952.

676

694

*Sutherland, Tuttle & Brennan, C. Baxter Jones Jr.,* for plaintiff in error.

*Thomas B. Branch, Herbert J. Haas, Joseph F. Haas,* contra.

FELTON, J.   After the filing of a second motion for a rehearing in this case, the defendants in error suggested a diminution of the record and asked that the missing record be sent up and considered.   As a part of the request the clerk of the trial court certified the record referred to.   This certified record will be considered as a part of the record, as it bears the proper certificate.   This record consists of demurrers to the defendants' amendment filed October 31, 1949, and the judgments overruling the demurrers.   The demurrers (identical as to each defendant) are as follows: "1. Petitioner demurs specially to the allegations contained in paragraphs 1, 2, 3, 6, 7, 8, 9, 10, 11 and 19, on the ground that they are irrelevant and immaterial to the issues in the case in the light of the written contract attached as Exhibit A to the petition, which said contract is admitted by the defendant in his said amended answer, in that the said contract, and particularly paragraph 3 thereof, places on the defendant, American Associated Companies Inc., the obligation of paying Vaughan his percentage of the net profits of the company without reference to any practice, custom or waiver, and such allegations attempt only to show a practice, custom or waiver inconsistent with the terms of the said written contract.   2. Petitioner demurs specially to the allegations contained in paragraphs 13, 14, and 15, on the ground that they seek to vary or explain the plain and unambiguous terms of the written contract of December 5, 1945, and particularly paragraph 3 thereof."

The defendants in error insist that the ruling on the foregoing demurrers constitutes the law of the case, since no exceptions were filed to these judgments.   In our original opinion in this case we held that our ruling in this case on its first appearance here meant that the written contract sued on, and especially the expression *"as shown on the books of the company,"* was unambiguous and meant a percentage of the profits of the company as the data and information on the books showed to be due as a matter of fact under correct accounting practices.   In so construing our prior decision we now believe we were in error. In that decision we neither said nor intimated anything as to the meaning of the words above quoted.   We simply held that the intention of the parties would be controlled by the expres-

sion "as shown on the books of the company," whatever it might mean, and not by past practices, waivers, etc. We are of the opinion that the defendants' amendments, referred to just above, are sufficient to allege an ambiguity in the meaning of the expression "as shown on the books of the company." The blanket attack of the first paragraph of the demurrer puts it into the category of a general demurrer and, since the paragraphs as a whole which were attacked by the demurrer contain enough to raise the question of the ambiguity of the said quoted expression, the court did not rule contrary to our ruling in the prior appeal. The second paragraph of the demurrer was properly overruled for the reason that the amendment raised the question of ambiguity in the contract, and the amendments did not as a matter of law seek to vary the terms of an unambiguous contract. Such a ruling was not contrary to our prior decision. In this view the overruling of the said demurrers did not fix the law of the case to be that the parties construed the written contract to mean that the profits were to be computed in accordance with past practices, waivers, etc., a contention which we do not think was authorized by pleadings or evidence. This question was the only real question settled by the ruling on the first appearance of the case. We ruled that past practices, waivers, etc., were superseded by the written contract.

Now we come to the crux of the case. Since the amendments raised the question of ambiguity as to the meaning of the words "as shown on the books of the company," what do such words ordinarily mean, and what did they mean to the parties to this case? Ordinarily such an expression means that the percentage of profits was to be computed from the data and information shown by the books by a computation which would honestly and fairly show the profits under usual, prevailing business practices. If the expression had a different meaning and both parties so understood it, such different meaning would prevail. The defendants alleged in their amendments and sought to prove that the books of the company as audited and found correct by named auditors showed that there were special pages in the books of the company showing the plaintiff's account and showing amounts due the plaintiff as arrived at by the use of a special formula used by the defendants in accordance with past

practices. These special pages did not show the complete working of the formula or completely how the figures were arrived at. There was no evidence that the plaintiff understood that the meaning of "as shown on the books of the company" was that the particular pages purporting to show the results of the formula were "the books" of the company contemplated by the contract. The formula provided that interest on invested capital in the converting department be charged as an expense before computing the plaintiff's share of profits, and that income taxes were to be deducted before computing his profits, which practice the auditor held not to be in accord with general accounting practice. The court held in effect that the practice followed in computing the plaintiff's profits showed what the parties intended by the provision in the written contract as to computation of profits "as shown on the books of the company," a contention we do not interpret the amended answer to raise. In this we think that the court was in error because the contract sued on specifically provided for settlement for one period according to past practices, etc., and for settlement for the other period of payment of a percentage of profits "as shown on the books of the company." In the prior decision this court held that the written contract superseded all prior agreements, practices, waivers, etc., and we do not see how such prior agreements could be considered to control and determine the meaning of the written contract. If the special pages in the book had the same result entered thereon as the past practices would show, then why the use of two different methods of showing the plaintiff's share of the profits? The original oral contract of the parties made no mention of the "books of the company," so the past practices could throw no light on what the parties meant by that expression so far as either contract was concerned. Past practices, waivers, etc., can throw no light on what the parties meant by "as shown on the books of the company," because the second, written contract was a new contract, which contained different provisions from the first and by which past agreements, practices, and waivers were swallowed up and superseded. The expression, "as shown on the books of the company," in our view, could only mean one of two things—either a percentage of profits shown by data and figures and information on the books

from which the profits were computed by accepted and usual truthful business methods; or the expression had a peculiar and special meaning, to wit, what the plaintiff's special pages showed, because it was contended that some of the parties so understood the contract and that the other acquiesced in such interpretation. Since the evidence does not authorize a finding that the parties understood the expression to mean that the plaintiff's particular pages would control the settlement, the first meaning of the expression above must be held to have been the legal meaning of the expression. One furnishing the capital is not entitled to interest on the stock when a division of profits is made. *Tutt* v. *Land*, 50 *Ga.* 339. Neither would it be fit and proper to deduct income taxes before computation of the plaintiff's share of the profits. The auditor so held, in effect. Neither the auditor nor the court held that the plaintiff was precluded by reason of accord and satisfaction or estoppel.

After a careful re-review of the case, we are of the opinion that the finding by the court on the grounds stated was not authorized by the evidence. The correspondence attached to the defendants' amendments herein referred to, introduced to show what the original contract was, does not show a contract as to how the plaintiff's share of the profits was to be computed, so as to be a guide for the construction of the last contract. The auditor and the judge found that the original contract was oral, and the evidence conclusively showed that this contract simply provided that the plaintiff's share of the profits would be a certain percentage of the profits, without providing how they should be computed.

■ The court did not err in refusing to recommit the case to the auditor. The errors committed require a reversal of the court's judgment, which will cover the points raised on the petition to recommit.

The auditor and the court should have found, under the pleadings and evidence before them, that the plaintiff's share of the profits should be computed from the data shown by the defendants' books generally, and not according to the formula which was used by the defendants and the results of which were placed on special pages of the books. It follows that the court erred in its findings of law and fact contrary to the rulings of

this court. The foregoing opinion, on second motion for rehearing, is substituted for the former opinion, which is withdrawn. The judgment of the court is adhered to on rehearing.

*Judgment reversed. Sutton, C.J., and Worrill, J., concur.*